WEAKLEY v. NEW YORK CENT. R. CO. (No. 312/135.)

(Supreme Court, Appellate Division, Third Department. November 10, 1915.)

1. CARRIERS ⊜⟶381—CARRIAGE OF PASSENGERS—INJURIES—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

In an administratrix's action against a railroad for death of an ejected passenger, her husband, evidence as to defendant's negligence *held* sufficient to support verdict for plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1473–1476, 1479–1482; Dec. Dig. ⊜⟶381.]

2. CARRIERS ⊜⟶366—CARRIAGE OF PASSENGERS—INJURIES TO PASSENGER—NEGLIGENCE—DUTY OF ROAD.

The rule prescribed by a railroad to govern the conduct of its conductor in ejecting a passenger for refusal to pay his fare, that the ejection must not be made if the passenger is not in a condition to take care of himself, was a fair test of the duty of the road itself in regard to its liability for the death of a passenger on its tracks, ejected at a small hamlet while under the influence of liquor and in a state of nervous prostration, after having been carried past his destination.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1454; Dec. Dig. ⊜⟶366.]

Appeal from Trial Term, Schenectady County.

Action by Mary A. Weakley, as administratrix of John J. Weakley, deceased, against the New York Central Railroad Company, successor, etc. Judgment for plaintiff, and from it, and an order denying its motion for new trial upon the minutes, the defendant appeals. Judgment and order affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Visscher, Whalen & Austin, of Albany (William L. Visscher, of Albany, of counsel), for appellant.

Harry V. Borst, of Amsterdam, for respondent.

JOHN M. KELLOGG, J. [1] The plaintiff's intestate, Weakley, was in poor health, suffering from a nervous breakdown, and at the time of his death was under the influence of liquor and had not taken any food for that day. He was riding with his wife upon the defendant's car from Utica to Amsterdam. As the train approached Amsterdam, his wife informed him that they were arriving at Amsterdam. She carried a part of the baggage out upon the platform, entered the car, and took the remaining baggage, and then discovered that her husband was not following her. She told the trainman that the man should get off, and they rapped on the window to him and attracted his attention. He merely turned around or moved, whereupon the trainman put his stepping block upon the platform of the car as the train was about starting, and after it had started the trainman pulled the bell rope, but the train continued. Later the trainman asked Weakley if he knew that he was supposed to get off at Amsterdam, and he answered he did. The trainman informed the conductor that Weakley should have got off at Amsterdam, but gave him no other information.

After the train left Amsterdam, the conductor applied to Weakley for his transportation, and he replied he did not have any. The conductor asked him where he was going, and he said Amsterdam. He was then informed that the train had left Amsterdam, and asked if he did not want to go to Schenectady, to which he replied he guessed so, or something to that effect. The conductor told him the fare would be 32 cents. Weakley said he would not pay any fare, and the conductor asked him if he expected to ride for nothing, and he made no answer. The conductor asked him his name, and he told him it was none of his business, or something to that effect. The conductor went through the train and found a foreigner, who refused to give up his ticket, saying he had delivered his transportation to Amsterdam. He refused to pay to Schenectady. The conductor then told Weakley that he must pay his fare or get off at Hoffman's. When the train arrived at Hoffman's, Weakley arose from the seat with his shoes in his hands. The conductor told him it was wet, and he must put on his shoes before he went out. He put on his shoes. The shoes had been taken off several times on the trip, as he had trouble with his feet.

The conductor then assisted him off the train at Hoffman's, the foreigner got off, and the conductor, as he says, walked over to an unknown man standing on the ground and requested him to look out for Weakley crossing the track. It does not appear what reply the unknown man made, or that he did anything. The train was stopped at Hoffman's to put the two passengers off. The little hamlet of Hoffman's, of 12 or 15 houses, is across the track from the station. The lights were visible in the village. There was a light in the signal tower, about 120 feet west of the station. Its lights, however, were shaded, and threw no reflection upon the road. North, and nearly parallel to the defendant's tracks, runs a state road and the trolley road. A dirt road extended from the river to the vicinity of the trolley station. A cluster light was at the trolley station, but it was not observable from the road near the defendant's tracks. The trolley station was 600 or 700 feet up the road from the defendant's tracks. In order to reach the trolley station, the state road, or the village, Weakley must cross the defendant's five tracks. If he went in the opposite direction, he would reach the Mohawk river. The next morning Weakley's dead body was found about 1,000 feet easterly from the station, near the track upon which the train ran. It is not known what train killed him.

It was a dark wet night and about 11:37 when the train stopped at Hoffman's. The verdict rests upon the theory that the conductor was negligent in putting a man in Weakley's apparent condition from the train at the place where he did. The defendant's rules require the conductor, in case a passenger refuses to give up his ticket or pay his fare, to cause the train to be brought to a stop at a regular station, or near some dwelling house, and request the person to leave the train, and if he refuses to remove him therefrom. They further provide:

"It should not be in such a place, in such weather or such unreasonable hour as might ordinarily endanger the health or safety of the person ejected. The

person ejected must not be a child, a person of unsound mind, or in such feeble or helpless condition as to be unable to take care of himself or herself at the point where ejected."

The fact that the conductor asked a bystander to take charge of Weakley is some evidence that the conductor knew he was unable to take care of himself. The knowledge which the company had of the man being carried by his station, of the efforts of the wife and trainman to get him from the car, of his attempt to leave the train with his shoes off, and all the circumstances, gave notice to the company that there was something the matter with him.

[2] The rule governing the conduct of a conductor under such circumstances is a fair test of the duty of the defendant. The jury may well have determined that Weakley was caused to leave the car at such a place, in such weather, and at such an unreasonable hour as might endanger his safety, and that he was in such a helpless condition as to be unable to take care of himself at the point where ejected. It is evident that he was not able to take care of himself. The only question is whether the conductor or the company had notice of that condition. The circumstances were sufficient to justify the jury in finding such notice. We cannot say, therefore, that the verdict is against the evidence.

The judgment and order should therefore be affirmed, with costs. All concur.